## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Jo Taylor Slovak<br>20 E Lakeview Ave<br>Columbus, OH 43202-1215<br>On behalf of herself and all others similarly situated | ) ) ) ) ) | Case No. |
| | ) | COMPLAINT – CLASS ACTION |
| AND | ) ) | |
| Daniel Newman<br>20 E Lakeview Ave<br>Columbus, OH 43202-1215<br>on behalf of himself and all others similarly situated | ) ) ) ) ) ) | |
| AND | ) ) | |
| Erin Davies<br>1930 Fenton St. Columbus Ohio 43224<br>on behalf of herself and all others similarly situated. | ) ) ) ) ) | |
| *Plaintiffs* | ) ) | |
| v. | ) ) | |
| KIA America, Inc.<br>c/o Statutory Agent  CT CORPORATION SYSTEM<br>4400 EASTON COMMONS WAY<br>SUITE 125<br>COLUMBUS OH 43219 | ) ) ) ) ) ) ) | |
| AND | ) ) | |
| Hyundai Motor America<br>c/o Statutory Agent CORPORATION SERVICE COMPANY<br>3366 RIVERSIDE DRIVE, SUITE 103<br>UPPER ARLINGTON OH 43221 | ) ) ) ) ) ) | |
| AND | ) ) | |
| Hyundai Kia America Technical Center, Inc. | ) | |

6800 Geddes Rd.
Superior Township, MI 48198

## CLASS ACTION COMPLAINT &
## DEMAND FOR JURY TRIAL

Now comes Plaintiffs Taylor Slovak, Daniel Newman, and Erin Davies,  individually and

on behalf of all other persons similarly situated, for their complaint for damages against

Defendants Kia America, Inc.; Hyundai Motor America, and Hyundai Kia America Technical

Center, Inc. (collectively, "Defendants").

## NATURE OF ACTION

1.      This is a class action claim arising from a defect in Defendants' vehicles

which make them easy to steal, unsafe, and worth less than they should be, if they

did not have the defect.

2.      Defendants did not disclose this defect, which is a material fact, and a

fact that a reasonable person would rely on when purchasing a vehicle.

3.      During the relevant class period, Defendants sold these Defective

Vehicles (as defined below) at multiple locations throughout the state of Ohio and

the United States.

4.      During the relevant class period, Defendants sold the Defective Vehicles to

Plaintiffs and other reasonable consumers without disclosing the fact that these vehicles had a

defect which made them easy to steal, unsafe, and worth less than they should be, if they did not

have the defect.

5.      As reported by 10WBNS, of the 4,000 vehicles reported stolen in the City of

Columbus, 1,500 were manufactured by Kia or Hyundai.[1]  Kia and Hyundai thefts in Columbus

increased by 458 % from 2021 to 2022.[2]

## PARTIES

6.      Plaintiff Taylor Slovak is a citizen of the state of Ohio.  Taylor Slovak is the

driver of her husband's, Daniel Newman's 2019 Kia Sportage and has been the victim of vehicle

theft.

7.      Plaintiff Daniel Newman is a citizen of the state of Ohio, and the owner of a 2019

Kia Sportage and his vehicle has been stolen on one occasion.

8.      Plaintiff Erin Davis is a citizen of the state of Ohio.  Plaintiff Davis is the owner

of a 2012 Hyundai Elantra, and has been the victim of vehicle theft

9.      Plaintiffs brings this action on their own behalf and as a representative of a class

of persons who purchased a Defective Vehicle that was manufactured, produced, distributed,

and/or sold by Defendants. This matter arises out of negligent acts, errors and omissions,

including those for which Defendants are strictly liable, committed by the Defendants against

Plaintiffs causing Plaintiffs and the putative class to suffer economic injury.

10.     Plaintiffs bring this action on their own behalf and as representatives of a class of

similarly situated persons to recover damages for violations of the Ohio Consumer Sales

Practices Act, Ohio Rev. Code § 1345.01 *et seq*., the Magnuson Moss Warranty Act, 15 U.S.C.

§§ 2301 *et seq.,* among other claims, for economic and injunctive relief against Defendants

which manufactured, tested, distributed, promoted and sold the Defective Vehicles.

---

[1] https://www.10tv.com/article/news/crime/kia-theft-victim-gets-car-stolen-for-third-time/530-7f4587fd-c054-
4f7c-885c-214d334c0e31
[2] https://www.10tv.com/article/news/crime-tracker/stolen-kias-hyundais-in-columbus/530-2d11ff60-4c7d-493e-
98d5-5915aca5ee86

11.    Plaintiffs are "persons" and have purchased a Defective Vehicle in a "sale", as those terms are defined in, Ohio Rev. Code § 1345.01 *et seq*., and under the Magnuson Moss Warranty Act. At the time the vehicle was purchased, Plaintiffs were unaware that the vehicle was defective and that it was not fit for the ordinary purposes for which the product is used in that it is easy to steal, unsafe, and worth less than it should be if it did not have the defect.

12.    Specifically, Plaintiff Davies purchased a 2012 Hyundai Elantra on or about 2012 at Taylor Hyundai located at 12681 Eckel Junction Rd, Perrysburg, OH 43551for personal, family, or household purposes.

13.    Plaintiff Davis, on behalf of herself and the putative class, seek a refund for monies paid as a result of their purchase of the Defective Vehicles, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

14.    On information and belief, Defendant, Kia America, Inc., is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

15.    Defendant Kia America, Inc. is licensed to do business in the state of Ohio and as appointed its statutory agent as CT Corporation System located at 4400 Easton Commons Way Suite 125 Columbus OH 43219.

16.    On information and belief, Defendant, Hyundai Motor America, is a California corporation that maintains its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Defendant Hyundai Motor America is engaged in the business of

testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying

and/or selling, either directly or indirectly, through third parties and/or related entities, the

Defective Vehicles.

17.    Defendant Hyundai Motor America is licensed to do business in the state of Ohio

and appointed its statutory agent as Corporation Service Company located at 3366 Riverside

Drive, Suite 103 Upper Arlington Oh 43221.

18.    On information and belief, Defendant, Hyundai Kia America Technical Center,

Inc., is a Michigan corporation that maintains its principal place of business at 6800 Geddes

Road, Superior Township, Michigan 48198. Defendant Hyundai America Technical Center, Inc.

is engaged in the business of testing, developing, manufacturing, labeling, marketing,

distributing, promoting, supplying and/or selling, either directly or indirectly, through third

parties and/or related entities, the Defective Vehicles.

19.    **JURISDICTION AND VENUE**

20.    This Court has subject matter jurisdiction over this action under the Class Action

Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which

numbers in the thousands, (2) Plaintiffs (Ohio) and Defendants (California and Michigan) are

citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. See

28 U.S.C. § 1332(d). Plaintiff is bringing a putative nationwide class that includes all people that

purchased a Defective Vehicle. On information and belief, Defendants have sold thousands of

Defective Vehicles throughout Ohio and the United States, totaling millions upon millions of

dollars in sales.

21.    This Court has personal jurisdiction over Defendants pursuant to Ohio Rev. Code §2307.382 in that Defendants transact business within the state of Ohio and committed one or more tortious acts within the state of Ohio.

22.    Defendants transacted business and/or committed tortious acts within the state of Ohio. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in Ohio. Defendants placed the Defective Vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Ohio from which Plaintiffs' claims arise.

23.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because it is the district in which Plaintiff Davis purchased the vehicle.

## FACTUAL ALLEGATIONS

24.    The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be if they did not have the defect.

25.    Defendants manufacture, design, produce, distribute, and sell the "Defective Vehicles," which are hereby defined as: "all Kia models from 2011-2021, and all Hyundai models from 2015-2021." All these vehicles share the same defects, and therefore an owner of any one of them may bring a class action on behalf of the entire class.

26.    Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiffs, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that are easy to steal, unsafe, and worth less than they should be, if they were not defective.

27.    The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that make it virtually impossible to start a vehicle without a key unless the vehicle's computer has been altered.

28.    This means that all a thief needs to do to steal one of the Defective Vehicles is remove a thin piece of plastic that covers the ignition column, exposing a fragile component that can also easily be removed, The thief can then stick a USB drive, a knife, or something that fits in the resulting hole to start the vehicle without a key or electronic signal from a key. Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily at hand to a would-be thief.

29.    Defendants knew their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

30.    Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

## CLASS ACTION ALLEGATIONS

31.    Plaintiffs brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of themselves and the following class of similarly situated persons: all persons who purchased a Defective Vehicle.

32.    Class Vehicle: All models of Kia and Hyundai that lacks an immobilizer device, thus containing the Defect as alleged herein.

33.    The Class: All persons or entities residing in Ohio who are current owners and/or lessees of a Class Vehicle.

34.     Consumer Subclass: All persons residing in Ohio who meet the definition of "Consumer" as that term is defined in Ohio Rev. Code. §1345.01 and who therefore have standing to assert a claim under the Ohio Consumer Sales Practices Act in connection with the purchase and/or lease of a Class Vehicle.

35.     There are questions of fact and law common to the Class or Consumer Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

    a.   Whether Defendants manufactured and designed the Defective Vehicles without engine immobilizers;

    b.   Whether the failure of the vehicles to have engine immobilizers installed makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

    c.   Whether the absence of an engine immobilizer is a material fact in the purchasing of a vehicle;

    d.   Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of engine immobilizers;

    e.   Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have engine immobilizers;

    f.   Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers;

    g.   Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers;

h.  Whether Defendants knew or should have known that the failure of the
vehicles to have engine immobilizers makes them easy to steal, unsafe, and
worth less than they would be if they had engine immobilizers;

i.  Whether Defendants continued to manufacture, market, distribute, and sell the
Defective Vehicles notwithstanding its knowledge of the defects' dangerous
nature and risks of harm;

j.  Whether Defendants knowingly omitted, suppressed or concealed material
facts about the unsafe and defective nature of the Defective Vehicles from the
consuming public;

k.  Whether Defendants' conduct violated the Ohio Consumer Sales Practices
Act;

l.  Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

36.  The questions set forth above predominate over any questions affecting only
individual persons, and a class action is superior with respect to considerations of consistency,
economy, efficiency, fairness and equity, to other available methods for the fair and efficient
adjudication of this controversy.

37.  A class action is the appropriate method for the fair and efficient adjudication of
this controversy. The presentation of separate actions by individual Class Members or Sub-Class
Members could create a risk of inconsistent and varying adjudications, establish incompatible
standards of conduct for Defendants.

38.  The claims of Plaintiffs are typical of the claims of members of the Class and the
Consumer Sub-Class. Upon information and belief, the Defective Vehicles all share the same
defects. Upon information and belief, the labels, manuals, advertising, and disclosures

concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects. Therefore, the information withheld by Defendants to Plaintiffs and all Class or Consumer Sub-Class members was identical.

39.    Plaintiffs are an adequate representative of the Class and Consumer Sub-Class because they are a member of both Classes and their interests do not conflict with the interests of the members of the Class or Consumer Sub-Class they seek to represent. The interests of the members of the Class or Consumer Sub-Class will be fairly and adequately protected by the Plaintiffs and the undersigned counsel, who have experience prosecuting complex mass tort litigation.

40.    Plaintiffs seek a refund of some or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

41.    Plaintiffs specifically exclude from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle based on the defects. This class action seeks only the economic and injunctive relief requested herein to which class members are entitled under the Ohio Consumer Sales Practices Act and other claims pled.

42.    Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Class or Consumer Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts

and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members or Consumer Sub-Class Members.

43.   Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

44.   Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Class or Consumer Sub-Class. Defendants withheld the same information from all members of the Class or Consumer Sub-Class and sold vehicles with the same defects.

45.   Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## TOLLING OF THE STATUTE OF LIMITATIONS

46.     Plaintiffs and the Class had no way of knowing about the Defect in their respective Class Vehicles because Defendants concealed it.

47.     Within the applicable period of limitations, certain Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence that Defendants were concealing the existence and nature of the Defect.

48.     Even in the event of preceding occurrences of theft, an ordinary consumer, without sophisticated knowledge of mechanical systems and antitheft devices, would not and could not suspect that his or her vehicle that was stolen was, in fact, attributable to a pervasive Defect because Defendants withheld this information and pointed to their express warranties, which purport to disclaim liability for these damages.

49.     Indeed, it was not until thefts exploded in Columbus—all occurring the same way and spreading across various social media outlets—that Defendants' decades–long obfuscation of the Defect became transparent.

50.     All applicable statute of limitations have therefore been tolled by operation of the discovery rule.

### *Fraudulent Concealment Tolling*

51.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active campaign to fraudulently conceal the existence and nature of the Defect through the period relevant to this action.

52.     Instead of disclosing the Defect in the Class Vehicles and the palpable threat it poses to public safety, Defendants continued to falsely represent that its automobiles were safe,

reliable, of high quality, and designed with the latest technological features to keep their drivers safe.

53.     In doing so, however, Defendants carefully sought to insulate themselves from liability through curated express warranties that—although advertised by Kia and Hyundai as industry–leading—purport to disclaim responsibility for both design defects and damages resulting from any theft.

54.     As the Defect is not readily observable and the average consumer is not technically savvy enough to understand, in isolation, why his or her vehicle may have been stolen, the increasing number of thefts of Defendants' vehicles was not fully appreciated by anyone except Defendants; that is, the only parties armed with the most data about this growing threat, which was beginning to cluster in specific areas around the United States, and the series of design flaws comprising the Defect.

55.     Because Defendants were and remain under a constant, unflagging obligation to disclose to Plaintiffs and the Class the true character, quality, and nature of the Defect in the Class Vehicles, Defendants' active concealment of this fact tolls any applicable statute of limitations.

### *Estoppel*

56.     The doctrine of equitable estoppel operates to bar a defendant guilty of fraudulent or inequitable conduct from asserting a given limitations period as a defense.

57.     Defendants were and remain under a constant, unflagging obligation to disclose to Plaintiffs and the Class the true character, quality, and nature of the Defect in the Class Vehicles.

58.    Thus, Defendants' failure to adhere to this mandate amounts to an affirmative

misrepresentation that—contrary to the true state of affairs—the Class Vehicles were safe and

reliable, just as Defendants have advertised for years.

59.    As a result, certain Plaintiffs and the members of the Class failed to commence an

action within the statutory period relying on Defendants' fraudulent and/or inequitable conduct

as noted above.

60.    This action is being brought on behalf of members of the Class who were affected

by Defendants' misconduct and there has been no unreasonable delay in pursuing it.

## CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

61.    Plaintiff realleges and incorporates herein all other allegations in this Complaint.

62.    The acts and practices engaged in by Defendants, and described herein,

constitute unlawful, unfair and/or fraudulent business practices in violation of the Ohio

Consumer Sales Practices Act §1345.01 *et seq.*

63.    Defendants engaged in unlawful practices including deception, false promises,

misrepresentation, and/or the concealment, suppression, or omission of material facts—

specifically, the failure to warn or disclose that the vehicles were defective, including that they

lacked an engine immobilizer—in connection with the sale, distribution or advertisement of the

Defective Vehicle in violation of the Ohio Consumer Sales Practices Act §1345.01 *et seq.*

64.    Plaintiff purchased the Defective Vehicle, a product that was falsely represented,

as stated above, in violation of the Ohio Consumer Protection Act, and as a result, Plaintiff

suffered economic damages in that the vehicle he purchased was worth less than the vehicles he

thought he had purchased had Defendants not omitted material facts. Plaintiff, and other

reasonable consumers, had no reasonable information to suggest that the Defective Vehicle lacked an engine immobilizer or was otherwise easy to steal and unsafe.

65.    Plaintiff and the Consumer Sub-Class members acted as reasonable consumers would in light of all circumstances.

66.    Defendants' actions and omissions would cause a reasonable person to enter in the sale and transaction that resulted in damages to Plaintiff and the Consumer Sub-Class.

67.    As a result of Defendants' actions and omissions, Plaintiff and the Consumer Sub-Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchases.

68.    Plaintiff and the Consumer Sub-Class also seek injunctive relief, requiring Defendants to fix the Defective Vehicles, at no cost to Plaintiff and the Consumer Sub-Class.

69.    At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the Defective Vehicles, Defendants knew of the dangerous condition of the vehicles, in that they lacked an engine immobilizer making them easy to steal, and supplied them with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and/or theft and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Vehicles lack of engine immobilizer and ease at which they can be stolen. Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and the Consumer Sub-Class.

70.     WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

71.     Plaintiff realleges and incorporates herein all other allegations in this Complaint.

72.     Plaintiffs bring this Count against Defendants on behalf of members of the Class.

73.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

74.     The Defective Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

75.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

76.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

77.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

78.     Defendants provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S. C. § 2301(7).

79.     As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not

far easier to steal than other vehicles, and were not unsafe due to the ease at which they can be

stolen.

80.    Defendants provided Plaintiff and the other Class members with an express

written warranty in connection with the purchase or lease of their vehicles, as described further

below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301(6).

81.    Defendants made written affirmations of fact that the Defective Vehicles would

be free of defects that would prevent ordinary use.

82.    Upon information and belief, Defendants affixed labeling and other written

affirmations making specific, performance-related representations related to the nature of the

Defective Vehicles, including expressly warranting that the Defective Vehicles were high

quality, properly designed, in conformance with applicable federal standards, and at a minimum,

would work properly.

83.    Defendants breached their express warranties for the Defective Vehicles by,

among other things, selling or leasing to Class members Defective Vehicles that are not free of

material defects; they contain no engine immobilizers, are far easier to steal than other vehicles,

and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

84.    Any efforts to limit the express and implied warranties in a manner that would

exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or

otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the

express and implied warranties are procedurally unconscionable. Defendants purposefully

misrepresented the Defective Vehicles to consumers.

85.     Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

86.     Any limitations on the express and implied warranties are substantively unconscionable.

87.     Defendants knew that no engine immobilizers were installed on the Defective Vehicles and they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

88.     Defendants failed to disclose the defects to Plaintiff and the other Class members even though Defendants were aware of the defects.

89.     Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

90.     Specifically, Plaintiff and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

91.     The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

92.     Privity is not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of engine immobilizers.

93.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

94.     Furthermore, affording Defendants an opportunity to cure their breach of
warranties would be unnecessary and futile.

95.     At the time of sale or lease of each Defective Vehicle, the Defendants knew,
should have known, or were reckless in not knowing of their misrepresentations and omissions
concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to
rectify the situation and/or disclose the defective design.

96.     Under the circumstances, the remedies available under any informal settlement
procedure would be inadequate, and any requirement that Plaintiff resort to an informal dispute
resolution procedure and afford Defendants a reasonable opportunity to cure their breach of
warranties is excused and thereby deemed satisfied.

97.     The amount in controversy of Plaintiff's individual claims meets or exceeds the
sum of $25.

98.     The amount in controversy of this action exceeds the sum of $50,000, exclusive
of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

99.     Plaintiff, individually and on behalf of the other Class members, seek all damages
permitted by law, including diminution in value of their vehicles, in an amount to be proven at
trial.

100.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class
members are entitled to recover a sum equal to the aggregate amount of costs and expenses
(including attorneys' fees based on actual time expended) determined by the Court to have
reasonably been incurred by Plaintiffs and the other Class members in connection with the
commencement and prosecution of this action.

101.    Additionally, Plaintiff and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including Defendants being required to fix these vehicles.

## COUNT III - UNJUST ENRICHMENT

102.    Plaintiff realleges and incorporates herein all other allegations in this Complaint.

103.    Plaintiffs and the Class and/or Consumer Sub-Class members purchased vehicles from the Defendants that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

104.    The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiffs and the Class.

105.    Plaintiff and the Class and/or Consumer Sub-Class are therefore entitled to restitution from the Defendants and seek an order requiring the Defendants to disgorge all profits, benefits and other compensation the Defendants obtained from the sale of these products.

106.    WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – BREACH OF IMPLIED WARRANTY

107.    Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiffs.

108.    Defendants, by selling the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

109.    Defendants sold the Defective Vehicle to Plaintiffs through its dealership in
Franklin County, Ohio.

110.    The Defective Vehicles sold by Defendants to Plaintiff did not conform with the
implied promises made with respect to the labels and material that accompanied the product.
Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers,
Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles,
were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

111.    As a result not having an engine immobilizer, among other defects, the Defective
Vehicles were not merchantable and Defendants breached their implied warranty of
merchantability with respect to the Defective Vehicles.

112.    Had Plaintiff known that the Defective Vehicles lacked an engine immobilizer,
among other defects, making them far easier to steal, and were thereby unsafe and worth less
than their sales price, they would not have purchased them, or would have paid significantly less
for the vehicles. As a result of Defendants' breach of implied warranty, Plaintiffs, and the Class
and/or Consumer Sub-Class members have suffered economic injuries.

113.    Defendants are being provided notice by receipt of demand made by Plaintiffs on
behalf of themselves and the putative class through the filing of this Complaint. In addition,
Defendants have actual notice of the defect.

114.    WHEREFORE, Plaintiffs pray for judgment against Defendants for actual
damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this
action, and for such further relief as the Court deems fair and reasonable.

## COUNT V – BREACH OF EXPRESS WARRANTY

115.    Plaintiff realleges and incorporates herein all other allegations in this Complaint.

116.    Defendants are and at all relevant times were merchants with respect to motor
vehicles under U.C.C. § 2-313.

117.    Upon information and belief, in the course of selling its vehicles, Defendants
expressly warranted in writing that the Defective Vehicles were high quality, properly designed,
in conformance with applicable federal standards, and at a minimum, would work properly.

118.    Defendants breached their express warranties for the Defective Vehicles by,
among other things, selling or leasing to Class members Defective Vehicles that are not free of
material defects; they contain no engine immobilizers, are far easier to steal than other vehicles,
and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

119.    Due to the Defendants' breach of warranties as set forth herein, Plaintiffs and the
Class assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-
711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of
the purchase price of all vehicles currently owned and for such other incidental and
consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

120.    Defendants were provided notice of these issues by complaints filed against them,
including the instant complaint, and complaints filed in other jurisdictions.

121.    As a direct and proximate result of Defendants' breach of express warranties,
Plaintiffs and the Class have been damaged in an amount to be determined at trial.

**COUNT VI NEGLIGENCE**

122.    Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

123.    Defendants designed, manufactured, distributed, tested, sold, applied, used and/or
supplied the Defective Vehicles at issue.

124.    Defendants held themselves out as a corporation capable of reasonably and
prudently developing, manufacturing, marketing, supplying, testing, distributing, applying,
using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have
and exercise the knowledge of an expert on such product.

125.    Defendants knew or should have known that the Defective Vehicles contained
defects including that, among other things, Defendants manufactured and designed them without
engine immobilizers, an electronic security device that makes it more difficult to start a vehicle
without a key.

126.    Defendants knew or should have known that the Defective Vehicles are incredibly
easy to steal.

127.    As designers, manufacturers, processors, packagers, distributors, marketers,
sellers, users, appliers and suppliers of the Defective Vehicles, Defendants had a duty to exercise
due care and the ordinary, reasonable and technical skill and competence that is required of
designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and
others in a similar situation, including, without limitation, the duty to test its vehicles; the duty to
acquire and maintain the knowledge of an expert; the duty to design, manufacture, process,
distribute, market, sell, and/or supply its vehicles free from defects and/or latent defects; the duty
to adequately warn of vehicle defects and/or hazards, which duty continued even after the sale of
said vehicles; and the duty to market, advertise, sell and supply vehicles with adequate
information and warnings about the unacceptable risk of theft their design failures create.

128.    Defendants failed to use due care under the circumstances and thereby breached
its duties as set forth above and was careless and negligent in the performance of its said duties
to Plaintiffs and the Nationwide Class and/or Consumer Sub-Class members.

129.    Plaintiffs used these Defective Vehicles in a manner ordinarily anticipated by Defendant.

130.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Nationwide Class and/or Consumer Sub-Class members have suffered economic injuries.

131.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiffs and Class members are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

132.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

133.    Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

134.    Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Class and/or Consumer Sub-Class members.

135.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT VII STRICT LIABILITY, DESIGN DEFECT

136. Plaintiffs re-allege and incorporate herein all other allegations in this Complaint.

137. Defendants designed, manufactured, and/or supplied the Defective Vehicles in question within the ordinary course of its business.

138. Plaintiffs purchased and own Defective Vehicles.

139. The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Defective Vehicles are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

140. Defendants knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

141. Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and failed to warn and/or instruct Plaintiffs and others of the defective and unreasonably dangerous nature of said vehicles.

142. Defendant's defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiffs and the Class and/or Consumer Sub-Class members.

143. Plaintiffs drive the vehicle and then parks them and leaves them unattended, which is a manner of use reasonably anticipated by Defendants.

144.    As a result of the Defective Vehicles' defect, which make them incredibly easy to steal, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

145.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiffs and the Class and/or Consumer Sub-Class members have suffered economic injuries.

146.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle without that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiffs and Class member are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

147.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

148.    Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

149.    Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Consumer Sub-Class members.

150.    At the time of Defendants' design, manufacture, processing, distribution, sale

and/or use of the Defective Vehicle, Defendants knew of the dangerous condition of said

vehicles and supplied them with deliberate and/or intentional disregard for making any warning,

instruction, or other precaution to prevent injuries and thereby showed complete indifference to

and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead

of the health and safety of others by intentionally omitting and concealing material facts about

the Defective Vehicles' safety features. Defendants' conduct which caused this damage was

willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Class and/or

Consumer Sub-Class.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for actual damages, in

excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for

such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

requests relief and judgment against Defendants as follows:

a.  That the Court enter an order certifying the Class, appointing Plaintiffs representative

of the Class, appointing Plaintiffs' counsel as class counsel, and directing that

reasonable notice of this action, as provided by Rule 23, be given to the Class;

b.  Alternatively, that the Court enter an order certifying the Consumer Sub-Class,

appointing Plaintiff Davies as representative of the Consumer Sub-Class, appointing

Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action,

as provided by Rule 23, be given to the Consumer Sub-Class;

c.  For a judgment against Defendants for the causes of action alleged against it;

d.  For damages in an amount to be proven at trial;

e.  For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

f.  For attorney's fees;

g.  For Plaintiffs' costs incurred; and

h.  For such other relief in law or equity as the Court deems just and proper.

## **DESIGNATION AND DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable in Cleveland, Ohio U.S.

District Court.

Dated August 11, 2022

Respectfully Submitted,

/s/ Melissa Payne

Melissa Payne (Ohio Bar No. 0098027)
Payne Law LLC
26600 Detroit Road, Suite 250
Westlake, Ohio 44145
(757) 768-9029 (Phone)
(216) 294-4839 (Fax)
Melissa@VincentEsq.com

Laurence Harrington (*Pro Hoc Vice Pending*)
The Harrington Firm
www.theharringtonfirm.com
(484) 469-0468